Thank you, Your Honours. Gary Preble. I represent Carlos Mendoza and his son L.M. and we are here requesting that the court reverse the district court which granted summary judgment, particularly granting qualified immunity to Sergeant Kipp. The question is were Sergeant Kipp's actions objectively reasonable and or was she plainly incompetent and our position is that she was incompetent because she based her actions on speculation and speculation and did not do a competent investigation. Can I ask you a question that hopefully you'll know the answer I should know but I just don't. Is the is the reasonable cause standard from our cases is it the same as probable cause or is it a lower standard? Do you know? I'm thinking it's about the same that's a I'm not sure that that's ever been addressed exactly but I think I should know the answer I just wondered if you knew off the top of your head no but but so can I just distill down then the issue in my mind and you tell me if it's correct. In order for you to prevail you would need to be able to establish that no reasonable officer in Sergeant Kipp's position could have had reasonable cause to believe that your client was on his way to see the Tara Tara is that because that really is what created the emergency in Sergeant Kipp's mind for the stop on on the side of I-5 right? That is correct. Okay so is that that's what we have to decide could any reasonable officer knowing the facts that she knew at the time have again that's why I was wondering what does reasonable cause mean? Either reasonable cause or probable cause to believe that when he's driving on I-5 going south I guess it was that he is going to meet up with Tara? Yes that I would say is the issue. Okay and so why could no reasonable officer in her shoes have come to that view? Let me let me go through the points there's a number of points before I do that however I'd like to point out what perhaps or probably you've already seen in terms of summary judgment taking things most favorably in light of the non-moving party there are actually several different categories of time there there's what Kipp knew ahead of time and then there's what Kipp knew as she went along and so therefore the things that Mr. or could have been said by Mr. Mendoza on the on alongside the freeway those have to be taken most favorably to Mr. Mendoza as opposed to the things that Kipp thought she knew ahead of time so I just although she doesn't necessarily believe Mr. Mendoza but she has to listen to him and take those things into consideration. Well that's correct then for the summary judgment standard he has to be it has to be construed in terms of that freeway most favorably. Most favorably doesn't mean she has to believe him. No she doesn't have to believe him but I think the that the well it has to be most favorably it has to be taken as to what he says was true at that point. No I don't think that's true that is to say when we're on summary judgment and we're looking at evidence on the record we have to take that as true but when we're not it sometimes is entirely reasonable for an officer to disbelieve what the suspect is telling her. Now Mr. Mendoza is not a suspect I understand that and there may have been all kinds of good reasons why she should have believed it but she doesn't necessarily have to believe it for purposes of whether her action is believable is reasonable. For example when he says I didn't I didn't write the the motion my lawyer did that has to be. That's pretty much likely that that's true yeah. In another well that has to be taken most favorable for Mr. Mendoza. It only has to the only thing that we have to take most favorably is that Mr. Mendoza says he said that to her. Yeah. But we don't have to accept for purposes of this that the statement that he said is true. Oh only we have we have a second-order problem here. We have if Mr. Mendoza says I told the officer that I was on my way to my grandmother's the officer may or may not believe that she that he's on his way to his grandmother's. She may have good basis for that she may not but if she says he never told me he was going to his grandmother's then there's a conflict in that evidence and what we do have to accept for purposes of your motion is that he told her he was going to his mother's. I will I will move on to get to the points upon which we base that it was objectively unreasonable. Here's the things and first of all there has to be articulable, imminent, a serious physical injury. There were no allegations of abuse. There was a vague statement from Colin Hayes that said here's a here's a because I thought you agreed with the premise that I started out with and you're now veering away from it. I'm on I'm operating under the assumption so tell me if you're now disagreeing that our standard standard that our case is established would have been met if in fact your client had been driving on his way to go meet up with Tara because there was a basis to be concerned that the the child would again once again be subject to serious harm and so so whether there was a beautiful it seems to me all that's irrelevant we're just trying to figure out was there reasonable cause to think that he was on his way to meet up with Tara and you started out by saying yeah you agree with that but now you're saying that I misunderstood your question because I don't agree with that. Got it. And I apologize for that. Let me start this so what does it start with starts with this order she gets in an email from Colin Hayes and he says it looks like Carlos or apparently as the word he used Carlos wants Tara to see Landon excuse me do I have to say LM here and then okay it's okay excuse me and and she has this motion and the motion is just that it's a motion it hasn't happened yet so what does she do she looks at the motion she calls it a petition but she doesn't get the order underlying it and she disregards what Colin Hayes said this is the order protecting Carlos from Tara and so she overlooked that so she begins by not investigating the what it was all about now what she did was he said that he and it was inartful I think he's agreed everybody sees he wants to let me let me just stop you there so did Tara have a no contact order with with Carlos yes he had two okay and did he did she have a no contact order with the son with LM yes through the criminal court okay so there's a no contact order with both Carlos and LM there are no there is a cut yes it's not the same order though right but there are yeah orders exist yes with respect to both Carlos and LM that's correct as well as a no visitation parenting plan as well right but it's important to keep in mind that Kip only knew of one of the orders protecting Carlos there's not nothing in the record that indicates she knew about the domestic violence protection I want to move you're losing time quickly here I want to I want to get what I what I for me is the most important question which is did officer Kip have reason to believe that that Carlos was on his way to see Tara no and and how do we know that and how did officer Kip know that because she speculated all along there was no evidence in the record that Carlos intended to violate orders why would he file a motion if he intended to violate the orders well because he had he had said he had said that he thought it was really important that their son be reunified with his with his mother that's right and to do that he filed a motion he went through the proper legal procedures and the and the officer did not know what that meant number one number two she misread she always said he wanted to reunify the family you saw that in the deposition she kept hammering on that point and that was a misreading here's a question with respect to the reasonableness of an officer's action it seems to me and we see this in various parts of life that you're the reasonableness of your action takes into consideration not only the probability that certain facts exist but also what happens if an unlikely event occurs if the if the event is unlikely but the consequence of the event is really catastrophic you might be quite reasonable in in saying you know what there's a 5% chance this is gonna be true but the but but what happens if it's true is really bad you may act to prevent the 5% chance except in it to follow that that's assuming that Carlos would allow her even if she were present with him and he were violating the order which he didn't and wouldn't that he would allow her to abuse the child I don't understand that but what I'm after here is that it may be that for officer Kip to have acted reasonably she didn't necessarily have to conclude that there was a better than 50-50 chance that he was on his way to take LM to Tara the thing is she had she had already believed that what you say sergeant and I were hoping that Carlos would take us to where LM and Tara were it was complete speculation if that's what she was hoping for why'd she stop him why didn't you just follow her well and that's that is my question too and when she got to the side of the road where he was there why didn't she then fill in the points upon what she had speculated and I think that is probably an essential issue there she should have said well where are you going Carlos just want to go in to see you Yessenia how do I know that well here's the phone call do you want to call Yessenia she she never did a find Tara just because Tara is somewhere doesn't mean that Carlos is going to allow Tara to abuse LM she had the she had the the address of her aunt and uncle the telephone number a half an hour before she started pinging to geolocate him and and she didn't do that did Kip know where where Tara was no she didn't know where Tara was nor did Carlos Kip didn't even try once the information was on her computer to find out right with the danger from the officer's standpoint if she doesn't know where Tara is is that then Tara can be just about any place including places that she doesn't typically have ituate well that's true but then you have to speculate that Carlos is going to be violating the order and just because she thinks he lied earlier does not mean he's gonna the problem is is that Carlos has indicated in papers that he thinks it's that that is correct but she didn't ask him she did not ask him what he meant by that and what isn't it it doesn't seem plain no for him he says hey I'm going to North Carolina I don't want to be hampered by these restraining orders that I can't talk to Tara if things work out that Tara is acquitted because I've been I want to be able to communicate with Tara in order to resolve issues between us as far as LM goes that was the reasoning there and had Kip asked her she would have had answers to answer her speculation and and she he says hey I'm heading out of town tomorrow night you want to camp on my doorstep you're welcome to do it but that's what I'm doing I have to be in North Carolina by the 12th I think it was I've only got a couple minutes left thank you good morning and may it please the court Sarah Boehner cook on behalf of the city of Vancouver and sergeant Berber Kip are you splitting time no okay well I believe that there was reasonable cause that there was imminent circumstances in this case this appeal can be decided on the second prong of the qualified immunity test in order for sergeant Kip is entitled to qualified immunity unless mr. Mendoza can show that it was beyond debate the confluence of factors presented to sergeant Kip on December 10th 2014 would not support a fighting exigency well I guess I'm willing to credit your position that if in fact mr. Mendoza was on his way to see Tara that there was a sufficiently urgent need to stop that right that that if the child were reunited with the mother at any point that there was reason to fear for the child's safety so I'm willing to officer in sergeant Kip's position had a basis to believe that that is in fact where he was going because if not if he's instead going to any of the other five million different places he could be on his way to there's plenty of time to go get a warrant right well the facts here do establish that exigency that that there was that concern that he was on the way to see Tara but but yes I mean there was I mean you could speculate that maybe that's where he was going but I guess I read our cases as saying you're sergeant Kip needed to have reasonable cause to believe that that's where he was going and and as your understanding that that's equivalent to probable cause or is it lower that is I in fact I haven't found anything that distinguishes reasonable calls from probable cause but my understanding would well then that's quite helpful for for us because it makes it real easy because we have plenty of cases in the criminal context right and and I guess I would say my officer Kip had had had received an anonymous phone call an anonymous tip saying that hey this guy has the one-year-old in the backseat of the car and he's on his way to go see Tara right I don't think that that would give I think the cases are pretty clear that unless you then corroborate enough of the facts to confirm that hey this person that just relayed this information to me is reliable you wouldn't have probable cause to to intervene at that point and and all I'm saying is that you don't even it's not even like she had an anonymous tip that that's where he was going she just was piecing it together from pretty thin reads right and I would disagree with you on that and specifically the motion that was filed just days before she took LM into custody it filed a motion with the court indicating that he did not believe the allegations that they thought they were untrue that he wanted to reunite the family that he was not did not fear his child being in Tara's presence that coupled with the fact that that same day on December 10th 2014 he was being suspicious about his whereabouts he was untruthful with the as far as where he was located indicating he was in North Carolina already when he was actually still in Vancouver and the week prior he had indicated to the court in order to dismiss the dependency the first dependency action with involving LM that he was going to be in California so all of that combined along with some some other the history here including the fact that he still had crimes of dishonesty pending against him suggesting that he's been untruthful in regard to LM in the past all of that combined I was sufficient to give sergeant Kip probable cause to believe that he was bringing LM to visit Tara you know I'm not sure I'd give away the probable cause reasonable thing quite so quickly that is to say I think what we're talking about here was there a reasonable basis for her action probable cause suggests you need more probably than not and I don't think you do depending upon you might have heard my question to the other side depending on the degree of danger that she apprehends and I think you're right your honor and specifically I'd point you to Mueller the offer where that was the situation where a baby was brought into the emergency room and the doctor opined that there was a 5% chance that that baby could die if a spinal tap was not performed he had meningitis the mother did not want to go undergo the procedure and this court and how that the officer was entitled to qualified immunity that the law was unclear on whether there's exigency exist in that case but that 5% chance that that baby and the the gravity of the harm involved wasn't was enough I mean we're not talking about certainly the gravity of the threat that's on the other end if in fact he's going to Tara that's why I said I grant you that that that that exists I'm not questioning that but our cases are really clear that it's reasonable cause to believe that the child is going to be in imminent danger of serious bodily injury right so the the reasonable cause is the factual predicate that the child will be exposed to to that danger and here the danger only exists if the one place he's on his way to on I-5 is to go see Tara if he's going to any of the other five million different places he could be going to that danger is non-existent so it comes back to what's the factual predicate you have for making the assumption that that is in fact where he's going and and you say well he was lying about this he had this motion and I guess I'm just saying that to me it's that's pretty pretty thin right especially for an intervention that's as severe as this one I mean you would credit I mean you grant I assume that having your one-year-old taken from you on the side of I-5 is a pretty pretty upsetting thing for any parent I was obviously balancing the concern for the child this is a child that had all four of his limbs broken eight eight bones in his body broken by the mother Tara and there were serious concerns that mr. Mendoza didn't understand the gravity of that and serious of the situation okay I grant you right that's why the threat on the other end is so severe don't you need to take some steps if you're an officer detective sergeant Kip's shoes to then verify that your there that like some collaboration I mean I don't know what specifically but other than just saying where are you going and the person says I'm going somewhere else and you say well I don't believe you don't you have to take some steps to corroborate well I think that she was right she ran out of time I mean this all happened very very fast we're at 10 a.m. on December 10th she learns about the motion that was filed where he said he wants to reunify the family and then he's not afraid of Tara and then by 131 30 or 2 o'clock she's learning that he was also dishonest with Sherry Hoffman that day he said he's already in California they ping a cell phone they find out that you know he's actually in Vancouver they locate him by 3 o'clock they've located him they're starting to do a surveillance and then he leaves in the car and everything happens so quickly that I think that just tell me just as a factual matter are you're or someone in sergeant Kip's position on this day in question not able to get a Mendoza again I think that this happened by the time that they set up surveillance to when she actually pulled up beside the car was about 4 p.m. within an hour there may have been time to continue that process but I think that at that point she's following him she's so you're making it sound as though if she didn't act right then by having the police pull him over on the side of i-5 that the substantial bodily harm would be inflicted on the child that's just not true there was still time because you didn't know where he was going how much further he had to travel so as a factual matter are you saying that because normally I thought you could get a telephonic warrant within like an hour there's not time to allow him to continue driving because the child's not in any danger in the car it's only if the car pulls up to a house it which terror is inside and he brings the child inside that's the only point at which the danger arises I believe that there was that she had reasonable cause to there that the child could be in serious harm if she did not take the child into custody but then I'll also go back to the second prong of the qualified immunity test and I would think that there was no clearly established law that would would allow kit Sergeant Kip to understand that under the circumstances presented that they wouldn't support a finding of exigency so not only does plaintiff have to prove the first point that there was not an exigency he'd have to also point us to clearly established law that put Kip on notice having pulled Mendoza off to the side having questioned Mendoza and obviously not fully believing Mendoza and if she says but you know I really think I need to get a warrant what's she gonna do is she gonna say well you stay right here for an hour or let's go off to the nearest exit for an hour and Mendoza says are you placing me under arrest I mean why are you limiting my freedom of movement she says I mean does she have the ability to arrest him there is her option to call on the phone to get a telephonic one as she follows him and does she can she say to him now you go slowly so I can follow you I mean what's supposed to happen here assuming she tries to get a warrant how's she gonna do that well this is and I'd have to speculate how it would all unfold but I do think under these circumstances she sees a danger I mean this is all he's in a car he's moving doesn't know where he's going is afraid that he's actually trying to bring the child to she is now out of her jurisdiction is that correct that's correct so could she have continued she did follow him into Oregon then asked for the assistance the Portland police could she have followed him wherever he was going because she had pulled had them pull him over and come out and say you know something I'm I'm very concerned I just want you to know I got eyes on you and then continue to follow could she have continued to she's out of her jurisdiction can she follow him or not well she we have there's a an agreement in place that allows the police to so she arguably could have followed him but I think when she saw LM in the car I mean how long I guess it's a that that again I that's a question that it's not and I'm not entirely clear on how far or how long she could call it continue to follow him I know that she had to call the Portland police to pull him over to execute the stop and then she just the purpose was to take LM at that point when she saw LM in the car but if I may I mean I I'd still like to go back to the point of the second prong of the qualified immunity test it's plaintiffs burden under well-established law plaintiff has the burden to show that sergeant could be put on notice by a particular case not just general principles but a that under the confluence of factors that existed on December 10th 2014 when they were quickly unfolding and she you know ran out of time and he was in the car then under those circumstances that would not support a fighting of exigence exigency and mr. Mendoza has has not done that he's pointed to to one case Wallace v Spencer that has very very different circumstances that is just not on point in a case for which this court three times since that in Kirkpatrick and sure set and a Mueller has decided that that does not clearly establish a law as when there's an imminent emergency that whether rather when in regard with you when there is not an emergency which requires removal of the child without a warrant there was just no emergency on i-5 at that particular moment I guess I maybe I would grant you if he had pulled up to some place I understand at that point of course you're gonna jump out and try to intercede before you can get into the house that makes perfect sense but without I mean it's just like the notion that somehow this was a you know a life or death death situation on the side of i-5 I just think is laughable that's not the case it's trying to predict where he was on his way to that that needs to be made and I guess I'm I'm you know your opponent suggested the like obviously she could make an investigation as to was terror inside or not and then you would save the the one-year-old from being separated from his father for what was it 40 days or something it was quite a while well and and the reason why he was separated for so long from his father was because a few months later a court found that the dependency was warranted that there was no cause to believe that he didn't understand the gravity of the the harm that was done to the child LM and and the danger of placing LM in the mother's presence so that reasonableness as far as her fearing you know the child being in terrorist presence was was substantiated in that extent so but again going back to the qualified immunity test I mean the one case that that mr. Mendoza sites which is Wallace v. Spencer was very different there was no child there was no harm to a child in that case the only tip the only piece of was a tip from a mentally ill relative who had a fantastic story that the father was going to commit a ritual sacrifice of one of the children and on that one tip the officer then went to the house and moved the kids after midnight and then of course in that case the children were later subjected to very intrusive physical examinations etc here we have very very different situation there was a child that was very severely harmed I mean that that was was real and there in this case as I mentioned this unfolding of the situation where we you know the dependency is dropped a week later he's following a motion saying he wants to reunite the family he doesn't believe the allegations he's lying about his whereabouts under he's then in the car and he's moving and you know officer kept have been trying to obtain a warrant I mean all of this sort of unfolding so quickly I think in those situation these situations under these facts officer kept just was not put on that was not sufficient to create an imminent circumstance where she's entitled to remove LM without a warrant and on that basis I believe that sergeant kick tip is entitled to qualified immunity and request that you affirm the district court's order thank you thank you I would like to correct a couple things there was not a dependency and that is a mistake and it's there was a shelter care hearing which is a reasonable cause hearing and then the dependency was dismissed and the child was returned to him and he took the child to North Carolina so that was a false statement secondly there the warrant RCW 26 44 0 5 0 and actually I just want a case on that statute in the in the state court a couple weeks ago it says that the way the order to be gotten is a is a is an order from the juvenile court under RCW 1334 for kip to be going out and getting a warrant just to pick up a child was doing the wrong thing entirely so she was also following the wrong procedure as well as basing herself on speculation council what do you think is our strongest it's our strongest case that should have alerted officer kip that she was violating the Constitution well I think Wallace not withstanding what was what was just said actually and I just ran across it and it was existing when I wrote my brief but there's some very good language in Demeray V Peterson 887 f-38 70 that regarding that but in terms of facts in they there wasn't an order but somebody told him there was an order and so they just went on ahead speculating that that order was there when it really wasn't there I realize we're gonna take you over time but don't don't be too concerned about that okay kip calls or notifies the Oregon police or the Portland police to stop mr. Mendoza which they do mm-hmm was that wrong yes and actually we just I've just briefed that in the Court of Appeals in Washington so that itself is wrong I believe that she violated the interlocal agreement and had no jurisdiction to do what she did and does she have qualified immunity for that action and I understand that's not in front of us at the moment but in your view does she have qualified immunity I think she was citizen kip when she was when she was there alongside the road in in Oregon okay well you just jumped a and then to have to have him stopped by the by the Oregon authorities she then shows up in your view what she's supposed to do at that point in the internet assuming that she's quite concerned about the safety of LM what she's supposed to do and I'll give her that a little bit but she's supposed to to recognize that much of her action is based on speculation and she needs to aren't you in North Carolina why are you in California why did you tell Hoffman what when are you going to be where you're going to be where are you going assume for a minute although I'm not asking you to concede assume for a minute that she's still concerned and she gets all those answers and turns out yeah he has to give her explanations for why he didn't tell the truth I mean what he's doing now is not what he said he was going to do no that wasn't just no that wasn't dishonest he had he originally had planned to go to California I shouldn't say there wasn't the truth he's doing now what he said he wasn't gonna do we know that much he's doing now something different that he thought he was going to be doing and what he said he was going to be doing and and he and she then give some answers and she's not entirely convinced and she has a suspicion that maybe he's gonna take LM to Tara now she may be right she may be wrong in the suspicion but she's suspicious what she's supposed to do well if I I would say she should talk to Yesenia where he was going well he says he's going and you're sending these yesenia's probably gonna say he's coming to my house right she she wanted him to take him to the hospital because she was pregnant and had labor pains and then and then he said I don't know where Tara is or she said how do I know where she is but she should have tried to contact Tara then but there there was no exigency and and Carlos could have said look call a major Haley you called him back in the other investigation and he's going to tell you that I'm heading to North Carolina in fact if you want to come camp out on my doorstep I'd be happy to have you do it I'm leaving town tomorrow night so there were things she could have done could she have followed him to wherever he was going I think she could have she believed the interlocal agreement gave her jurisdiction for what she was doing and given that belief she could have followed him to Yesenia's house and could she have had her could she have gotten a warrant I think I just heard you say she couldn't she wasn't entitled to a warrant no not under 26 44050 in fact if you look at the reasons for a warrant none of them fit the situation that she because Carlos she wasn't even arresting Carlos there by the side of the road well and if she can't get a warrant how does that cut well she could have gotten a juvenile court order that's what she was supposed to do if if there was an order to be gotten okay so thank you very much and I would we would ask you to reverse the district court thank you Mendoza versus City of Vancouver submitted for decision last case the United States versus Tones Blackmon Carmen
judges: W. Fletcher, Bybee, Watford